UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MORINE O.,[1]

                     Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.

_____

<u>DECISION & ORDER</u>

20-CV-6682MWP

## <u>PRELIMINARY STATEMENT</u>

Plaintiff Morine O. ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Disability Income Benefits ("DIB"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 29, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 19).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 16, 17). For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with applicable legal standards.

---

[1] Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and plaintiff's motion for judgment on the pleadings is denied.

## DISCUSSION

### I. Standard of Review

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  To the extent they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).  In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis.  *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*).  The five steps are:

(1)    whether the claimant is currently engaged in substantial gainful activity;

(2)    if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3)    if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");

3

(4)   if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform [his or her] past work; and

(5)   if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II.   <u>The ALJ's Decision</u>

In his decision, the ALJ followed the required five-step analysis for evaluating disability claims.  Under step one of the process, the ALJ found that plaintiff had not engaged in substantial gainful activity since November 18, 2017, the alleged onset date.  (Tr. 17).[2]  At step two, the ALJ concluded that plaintiff had the following severe impairments: status-post bilateral shoulder sprain/strain with impingement syndrome, cervical, thoracic and lumbar sprain/strain, lumbar spondylosis and obesity.  (*Id.*).  The ALJ also noted that plaintiff suffered from several other impairments but that those impairments were "non-severe."  (*Id.*).  At step three, the ALJ found that plaintiff did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments in the Listings.  (*Id.*).

---

[2]   The administrative transcript (Docket # 14) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

The ALJ concluded that plaintiff retained the RFC to perform sedentary work but with certain limitations. (Tr. 18). Specifically, the ALJ found that plaintiff could never crawl, use ladders, ropes, or scaffolds, or use her left arm to reach overhead or push/pull, could only occasionally engage in other postural movements, use her left arm to handle, and use her right arm to reach overhead or handle, and must be permitted a sit/stand option at will, defined as sitting for sixty minutes at a time and then standing for five minutes. (*Id.*). At step four, the ALJ determined that plaintiff could perform her past relevant work as generally performed and as actually performed based upon plaintiff's description. (Tr. 26). Accordingly, the ALJ found that plaintiff was not disabled. (*Id.*).

In formulating the RFC, the ALJ considered and evaluated eight medical opinions regarding plaintiff's physical functional capacity authored by six different physicians. (Tr. 23-25). On February 1, 2018, orthopedic surgeon Edward L. Mills, MD, conducted an examination of plaintiff and opined that she was capable of working "in a sedentary capacity with restrictions on lifting greater than [ten pounds], repetitive bending and twisting at the waist and repetitive overhead activities." (Tr. 397-400). Mills reexamined plaintiff on May 9, 2018, and opined at that time that plaintiff was capable of working provided she was not required to lift greater than twenty-five pounds or engage in repetitive overhead activities. (Tr. 669-72). The ALJ found Mills's opinions to be "mostly persuasive in regards to performing sedentary type work," concluding that they were "consistent with the record and supported by diagnostic imaging studies and findings by the consultative physical examiner." (Tr. 24).

On March 16, 2018, consultative physician Harbinder Toor, M.D., conducted an internal medicine evaluation of plaintiff. (Tr. 380-83). Toor concluded that plaintiff had marked limitations to standing, walking, bending, lifting, and carrying and moderate limitations to sitting

a long time, reaching, pushing, pulling and twisting of the cervical spine. (*Id.*). The ALJ found Toor's opinion to be "mostly persuasive" and indicated that he interpreted the opinion to be consistent with plaintiff's "ability to perform sedentary work activities." (Tr. 24). According to the ALJ, such an opinion was "consistent with the record [and] supported by objective clinical findings." (*Id.*).

On April 24, 2018, non-examining consultative physician A. Periakaruppan, M.D., reviewed plaintiff's medical records and Toor's opinion and concluded that plaintiff was capable of lifting up to twenty pounds occasionally and ten pounds frequently and standing, walking, and/or sitting for up to six hours of an eight-hour workday. (Tr. 79-88). According to Periakaruppan, plaintiff was capable of occasionally kneeling, stooping, crouching, crawling, and climbing ramps, stairs, ladders, ropes, and scaffolds and was not limited in her ability to balance and push and/or pull. (*Id.*). Periakaruppan concluded that plaintiff was "expected to retain the ability to perform the demands of the full range of light work." (*Id.*).

Another non-examining consultative physician, Judith Vogelsang, D.O., reviewed plaintiff's medical records and rendered an opinion on January 7, 2019. (Tr. 832-42). Vogelsang opined that plaintiff was able to frequently lift or carry up to ten pounds and stand or walk up to two hours and sit for about six hours of an eight-hour workday. (*Id.*). According to Vogelsang, plaintiff was unable to crawl or climb ladders, ropes or scaffolds, but could occasionally balance, stoop, kneel, and crouch and was not limited in her ability to push and/or pull. (*Id.*). Vogelsang also opined that plaintiff did not have any feeling, fingering, or handling limitations, but that she was limited in her ability to reach in all directions, including overhead. (*Id.*). According to Vogelsang, plaintiff should avoid concentrated exposure to extreme cold or vibrations. (*Id.*). Vogelsang opined that plaintiff was capable of performing sedentary work.

(*Id.*).  The ALJ found the opinions of Periakaruppan and Vogelsang to be "mostly persuasive."
(Tr. 24).

On July 25, 2018, treating source Oliver Masaba, M.D., completed a medical
source statement evaluating plaintiff's physical functioning.  (Tr. 650-57).  He opined that
plaintiff was able to occasionally lift and carry up to ten pounds and could sit for up to three
hours and stand or walk for up to one hour of an eight-hour workday.  (*Id.*).  According to
Masaba, plaintiff could only sit for twenty-five minutes, stand for ten minutes, and walk for
fifteen minutes without needing a break, and she required the use of a cane.  (*Id.*).  Masaba
indicated that plaintiff was unable to climb stairs, ramps, ladders, or scaffolds, balance, crouch,
or crawl, but she could occasionally stoop and kneel.  (*Id.*).  According to Masaba, plaintiff was
able to occasionally handle, push and pull, and reach overhead and frequently reach in other
directions, finger and feel with her right arm.  (*Id.*).  With respect to her left arm, Masaba opined
that plaintiff was unable to reach overhead, push, or pull, but she could occasionally reach in
other directions, handle, and finger, and could frequently feel.  (*Id.*).  Masaba indicated that
plaintiff could occasionally operate foot controls with her right foot and frequently operate foot
controls with her left foot.  (*Id.*).  Masaba further opined that pain was likely to interfere with
plaintiff's work, would cause her to be absent at least two days per month, and would produce
good and bad days.  (*Id.*).  According to Masaba, on "bad days" plaintiff's pain would decrease
her productivity by up to twenty-five percent.  (*Id.*).

On September 19, 2019, Masaba completed a physical assessment for
determination of employability form related to plaintiff.  (Tr. 1247-50).  He opined that plaintiff
could lift and carry up to ten pounds, frequently sit, occasionally walk, stand, and climb stairs
and ramps, but could never stoop, kneel, crouch, crawl, or climb ladders or scaffolds.  (*Id.*).

Regarding her right hand, he opined that plaintiff could never reach overhead, push or pull, but that she could frequently finger and feel and occasionally handle and reach in other directions. (*Id.*).  With respect to her left hand, Masaba indicated that plaintiff could not reach overhead, but that she could continuously feel, frequently handle, finger, and reach in other directions, and occasionally push or pull.  (*Id.*).  Masaba concluded that plaintiff was capable of performing sedentary work involving mostly sitting with limited standing, ambulating or climbing stairs, occasional lifting of up to ten pounds, and reduced twisting or turning of her back and neck, although plaintiff would be able to turn her neck more frequently than her back.  (*Id.*).  Masaba also indicated that plaintiff would not be able to engage in overhead reaching, climbing or crawling and that she would require the ability to change positions hourly.  (*Id.*).  The ALJ concluded that Masaba's opinions were "partially persuasive."  (Tr. 25).  According to the ALJ, the opinions were internally inconsistent and contained findings that were inconsistent with other record evidence.  (*Id.*).  Nevertheless, the ALJ concluded that the portion of the opinion that concluded that plaintiff could perform sedentary type work was consistent with the other medical opinions and was supported by the medical evidence.  (*Id.*).

Lawrence Wiesner, D.O., examined plaintiff on September 21, 2018. (Tr. 675-79).  He concluded that plaintiff was capable of performing sedentary work provided that she was not required to lift in excess of ten pounds and was free to sit and stand.  (Tr. 678). The ALJ determined that Wiesner's opinion was the "most persuasive," reasoning that it was consistent with other opinion evidence demonstrating plaintiff's ability to perform sedentary work activities.  (Tr. 24).

III.    **Plaintiff's Contentions**

Plaintiff contends that the ALJ's determination that she was not disabled is not supported by substantial evidence and is the product of legal error.  (Docket # 16-1).  First, plaintiff argues that the ALJ failed to account for twisting limitations identified in the opinions authored by Toor, Mills, and Masaba despite finding those opinions to be persuasive.  (*Id.* at 11-16).  Second, plaintiff maintains that the ALJ failed to properly evaluate her subjective complaints.  (*Id.* at 16-20).

IV.    **Analysis**

A.    **The ALJ's RFC Assessment**

I turn first to plaintiff's contention that the ALJ erroneously failed to account for the twisting limitation identified in the three medical opinions.  (*Id.* at 11-16).  The Commissioner responds that the ALJ's consideration of these opinions complied with the new regulations pertaining to the evaluation of medical opinion evidence.  (*See* Docket # 17-1 at 10-16).

An individual's RFC is her "maximum remaining ability to do sustained work activities in an ordinary work setting on a continuing basis."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, *2 (1996)).  In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis."  *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)).  "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms."  *Stanton v. Astrue*, 2009 WL

1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010).

As both parties recognize, the Commissioner has implemented new regulations relating to the evaluation of medical opinion evidence for claims filed on or after March 27, 2017, which apply here.[3]  *See generally* 20 C.F.R. §§ 404.1520c, 416.920c.  Under these new regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[,] . . . including those from [a claimant's] medical sources." *Id.* at §§ 404.1520c(a), 416.920c(a); *accord Harry B. v. Comm'r of Soc. Sec.*, 2021 WL 1198283, *6 (N.D.N.Y. 2021) ("[a]ccording to the new regulations, the Commissioner will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion") (quotations omitted); *Rivera v. Comm'r of Soc. Sec. Admin.*, 2020 WL 8167136, *14 (S.D.N.Y. 2020) ("the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion") (citation omitted), *report and recommendation adopted by*, 2021 WL 134945 (S.D.N.Y. 2021).  "Instead, an ALJ is now obligated to evaluate the persuasiveness of 'all of the medical opinions' based on the same general criteria: (1) supportability; (2) consistency with other evidence; (3) the source's relationship with the claimant; (4) the source's area of specialization; and (5) other relevant case-specific factors 'that tend to support or contradict a medical opinion or prior administrative medical finding.'"  *Amanda R. v. Comm'r of Soc. Sec.*, 2021 WL 3629161, *6 (N.D.N.Y. 2021) (footnote omitted) (quoting 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5)).

---

[3]  Plaintiff filed her claim for DIB on March 9, 2018.  (*See* Tr. 160).

According to the regulations, "supportability" and "consistency" are the "most important" factors in evaluating the persuasiveness of medical opinion evidence.  20 C.F.R. §§ 404.1520c(a), (b)(2), 416.920c(a), (b)(2).  Indeed, "[a]n ALJ is specifically required to 'explain how [he or she] considered the supportability and consistency factors' for a medical opinion," *Harry B. v. Comm'r of Soc. Sec.*, 2021 WL 1198283 at *7 (quoting 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)), and need not discuss the remaining factors, *see Rivera v. Comm'r of Soc. Sec. Admin.*, 2020 WL 8167136 at *14.  As it relates to the "supportability" factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)[,] . . . the more persuasive the medical opinion(s) . . . will be."  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  With regard to the "consistency" factor, the regulations state that "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be."  *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).  "Where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a 'single analysis.'"  *Cory W. v. Comm'r of Soc. Sec.*, 2021 WL 5109663, *4 (W.D.N.Y. 2021) (quoting 20 C.F.R. § 416.920c(b)(1)).

Plaintiff maintains that the ALJ improperly and without explanation rejected the twisting limitations assessed by Mills, Masaba and Toor despite finding the opinions to be persuasive, warranting remand.  (Docket # 16-1).  I disagree.  As an initial matter, although plaintiff challenges the RFC's lack of an explicit twisting limitation, it is not clear that a limitation in the ability to twist necessarily precludes sedentary work  *See Penfield v. Colvin*, 563 F. App'x 839, 840 (2d Cir. 2014) (summary order) ("[a]s the ALJ correctly observed, none of

these limitations [including repetitive twisting] preclude [plaintiff's] engagement in at least sedentary exertion") (internal quotations omitted).  Thus, it is not clear that the ALJ's RFC assessment is even inconsistent with these opinions.  *See Jeffrey G. v. Comm'r of Soc. Sec.*, 2021 WL 4844146, *10 (N.D.N.Y. 2021) ("[p]laintiff makes much of the ALJ's conclusion that plaintiff retained the ability to turn his head and look up and down, despite [the doctor's] opinion for moderate limitations [in bending and turning his head][;] [h]owever, this court is not convinced that the RFC is inapposite to [the doctor's] opinion").

In any event, even if the assessed twisting limitation necessarily precluded sedentary work, I find that the ALJ's RFC assessment is supported by substantial evidence.  In challenging the ALJ's RFC assessment, plaintiff minimizes several salient facts.  First, and most significantly, plaintiff wholly ignores the ALJ's finding that Wiesner's opinion was the "most persuasive" and that it was "consistent with other opinion evidence showing ability to perform sedentary work activities."  (Tr. 24).  As noted above, Wiesner opined that plaintiff was capable of sedentary work provided she was not required to engage in repetitive overhead activities – a limitation specifically accounted for by the ALJ in the RFC.  (Tr. 18, 671).

Second, although plaintiff correctly notes that Mills and Masaba each submitted an opinion assessing a twisting limitation, she fails to meaningfully discuss the fact that both submitted another opinion that did not contain the limitation.  As noted above, although Mills's first opinion contained a limitation for repetitive twisting at the waist, his subsequent evaluation conducted in May 2018 did not contain any twisting limitations.  (*Compare* Tr. 399 *with* Tr. 671).  Similarly, Masaba's second opinion, authored in September 2019, indicated that plaintiff should engage only in work activities that required reduced twisting or turning,

particularly of her lower back, but his earlier opinion, authored in July 2018, does not contain a similar limitation.  (*Compare* Tr. 650-57 *with* Tr. 1247-1250).

As noted by plaintiff, the ALJ determined that the opinions of record had varying degrees of persuasiveness.  The ALJ found that Mills's and Toor's opinions were "mostly persuasive" – the same finding he made about the opinion provided by Vogelsang, who did not identify any twisting limitation.  (Tr. 24).  Regarding Masaba's opinions, the ALJ found them only "partially persuasive," concluding that they were internally inconsistent and assessed limitations not consistent with other record evidence.  (Tr. 25).  Moreover, the ALJ made clear that he found the three physicians' opinions persuasive only to the extent that they were consistent with the other record evidence supporting the conclusion that plaintiff was able to engage in sedentary work.  (Tr. 24 ("Dr. Toor's opinion is mostly persuasive, . . . [I] interpret [the] opinion as ability to perform sedentary work activities[;] . . .  Dr. Mills' opinion are mostly persuasive in regards to performing sedentary type work[;] . . . [the] opinions are consistent with the record and supported by diagnostic imagining studies and findings by the consultative physical examiner"), 25 ("Dr. M[a]saba's opinions are partially persuasive[;] . . . [the] portion of [the] opinion addressing ability to work on a sustained basis, up to [forty] hours per week performing sedentary type work, is consistent with other opinions").

Although the ALJ did not explicitly adopt the twisting limitation contained in the opinions of Mills, Masaba, and Toor, or specifically discuss why he rejected it, remand is not justified on this basis.  Simply stated, "an ALJ is not required to adopt a medical opinion in its entirety and may determine an RFC that differs from a medical opinion, where these differences are supported by substantial evidence in the record and are not the product of legal error." *Ferraras-Matos v. Comm'r of Soc. Sec.*, 2021 WL 7287630, *18 (S.D.N.Y. 2021) (collecting

cases), *report and recommendation adopted by*, 2022 WL 292921 (S.D.N.Y. 2022); *Jeffrey G. v. Comm'r of Soc. Sec.*, 2021 WL 4844146 at \*10 ("[e]ven if the ALJ had effectively rejected a portion of [a medical opinion she found persuasive] in rendering an RFC allowing for head movement, she was under no obligation to accept the consultative examiner's opinion as a whole").

Review of the ALJ's decision demonstrates that he carefully reviewed the medical opinions contained in the record and considered them in light of the record as a whole, including plaintiff's medical records and her testimony, in finding specific opinion evidence persuasive or less persuasive. The ALJ explained that the opinions of Mills, Masaba, and Toor were mostly or partially persuasive only insofar as they were consistent with other record evidence demonstrating that plaintiff was able to engage in sedentary work. In reaching these conclusions, the ALJ considered the other opinion evidence, including opinions authored by Vogelsang and Wiesner, each of whom assessed that plaintiff was capable of performing sedentary work, although they recognized that she had postural and reaching limitations and would require a sit/stand option – limitations that were specifically accounted for by the ALJ in formulating the RFC. Thus, in formulating plaintiff's RFC, the ALJ resolved the conflicting medical opinions in the record, which he was permitted to do. *See Ferraras-Matos v. Comm'r of Soc. Sec.*, 2021 WL 7287630 at \*18 ("[because] the ALJ considered conflicting opinions in the record on this point, with some doctors finding a limitation for reaching . . . and others not finding any limitation for reaching, the Court will defer to the ALJ's determination on how to weigh this evidence"). I find that the ALJ adequately explained his reasons for evaluating the various medical opinions as he did and that substantial evidence supports his determination. *See Kevin Thomas C. v. Comm'r of Soc. Sec.*, 2022 WL 539392, \*5 (N.D.N.Y. 2022) ("despite declining to include [the doctor's]

14

mild-to-moderate limitations with[in] the RFC, or discuss why she rejected them, the [c]ourt

finds no error[;] . . . [t]he ALJ appropriately explained her rationale in weighing the various

medical opinions, the medical treatment evidence, plaintiff's testimony, and activities of daily

living"); *Alisa O. v. Comm'r of Soc. Sec.*, 2021 WL 3861425, *4 (W.D.N.Y. 2021) (affirming

where ALJ found the consultative examiner's opinion to be persuasive but did not incorporate

the head movement, sitting, and reaching limitations assessed by the consultative examiner; "the

Commissioner notes that under the new regulations – which are applicable to this case – the ALJ

is not required to provide a written analysis about the consideration of each piece of evidence,

but rather, the ALJ must provide information sufficient to allow a reviewer 'to trace the path of

an adjudicator's reasoning[;]' [t]he Commissioner argues that the ALJ sufficiently did so here[,

and] [t]he [c]ourt agrees") (quoting 82 Fed. Reg. 5844-01, at 5858 (Jan. 18, 2017)).

       Based on the record in this case, including the opinion evidence and treatment

notes, I find that the ALJ's RFC determination is supported by substantial evidence. *See Matta*

*v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) ("[a]lthough the ALJ's

conclusion may not perfectly correspond with any of the opinions of medical sources cited in his

decision, he was entitled to weigh all of the evidence available to make an RFC finding that was

consistent with the record as a whole").  Accordingly, remand is not warranted on this basis.

     **B.**    **The ALJ's Assessment of Plaintiff's Subjective Complaints**

       I turn next to plaintiff's contention that the ALJ failed to explain adequately his

determination that plaintiff's subjective complaints were inconsistent with the record as a whole.

(Docket # 16-1 at 13-16).  For the reasons explained below, plaintiff's challenge is without merit.

       An evaluation of subjective complaints should reflect a two-step analysis.  *See* 20

C.F.R. §§ 404.1529, 416.929.  First, the ALJ must determine whether the evidence shows that

the claimant has a medically determinable impairment or impairments that could produce the

relevant symptoms.  *See id.*  Next, the ALJ must evaluate "the intensity, persistence, or

functionally limiting effects of [the] symptom[s]."  *Id.*  The relevant factors for the ALJ to weigh

include:

> (1) [the claimant's] daily activities; (2) [t]he location, duration,
> frequency and intensity of [the claimant's] pain or other
> symptoms; (3) [p]recipitating and aggravating factors; (4) [t]he
> type, dosage, effectiveness, and side effects of any medication the
> claimant take[s] or ha[s] taken to alleviate [his or her] pain or other
> symptoms; (5) [t]reatment, other than medication, [the claimant]
> receive[s] or ha[s] received for relief of [his or her] pain or other
> symptoms; (6) [a]ny measures [the claimant] us[es] or ha[s] used
> to relieve [his or her] pain or other symptoms . . . ; and (7) [o]ther
> factors concerning [the claimant's] functional limitations and
> restrictions due to pain or other symptoms.

*See* 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii)).

Here, the ALJ concluded that plaintiff's statements "concerning the intensity,

persistence and limiting effects of [her] symptoms are not entirely consistent with the medical

evidence and other evidence in the record for the reasons explained in this decision."  (Tr. 20).

According to the ALJ, plaintiff's statements were "not substantiated or corroborated by the

evidence of record."  (*Id.*).  In reaching this conclusion, the ALJ assessed plaintiff's subjective

complaints in the context of the entire record.  I disagree with plaintiff's contention that the ALJ

failed to explain his determination or that he placed undue emphasis on certain evidence in

reaching his determination.

Plaintiff's challenge appears to center on her contention that the ALJ failed to

explain sufficiently how plaintiff's subjective complaints were inconsistent with the record.

(Docket # 16-1 at 16-20).  To the contrary, the ALJ explained at length his determination that

plaintiff's complaints of disabling symptoms were not consistent with the objective findings, the

relatively conservative course of treatment recommended by plaintiff's medical providers, the medical opinions of records that repeatedly demonstrated her ability to engage in sedentary work with some postural and reaching accommodations, and plaintiff's daily activities.  (Tr. 25-26). He also noted that, despite complaints of debilitating pain, plaintiff had traveled to Africa for one month, was currently working as a delivery driver approximately four hours per week, and was completing approximately thirteen hours of volunteer work per week in connection with her receipt of financial assistance from the Department of Social Services.  (*Id*).  Plaintiff suggests that the ALJ improperly relied on her course of treatment, part-time work and month-long trip out of the country in assessing her subjective complaints.  While not determinative, such information is relevant to the ALJ's determination.  *See Hurlburt v. Berryhill*, 2018 WL 1959238, *6 (W.D.N.Y. 2018) ("[a] claimant's work during the relevant period, even on a part-time or less than substantial-gainful-employment basis, may be considered"); *DiMauro v. Berryhill*, 2017 WL 1095024, *11 (D. Conn. 2017) ("[w]hile evidence of [plaintiff's] part-time work and other activities may not foreclose the possibility of his being disabled under the Social Security laws, such evidence can be considered for the purposes of assessing his credibility"). This record reveals that the ALJ applied the proper legal standards in analyzing plaintiff's subjective complaints and that substantial evidence supports his determination that plaintiff's complaints were inconsistent with the record for the reasons he stated.  *See Luther v. Colvin*, 2013 WL 3816540, *7 (W.D.N.Y. 2013) (ALJ properly assessed subjective complaints where she "reviewed all of [p]laintiff's subjective complaints . . . [and] properly considered [p]laintiff's activities of daily living, inconsistent testimony and how her symptoms affected her attempts at maintaining a job").

In sum, plaintiff's challenge amounts to a disagreement with the ALJ's consideration of conflicting evidence. "[U]nder the substantial evidence standard of review, [however,] it is not enough for [p]laintiff to merely disagree with the ALJ's weighing of the evidence or to argue that evidence in the record could support her position." *Warren v. Comm'r of Soc. Sec.*, 2016 WL 7223338, *6 (N.D.N.Y.), *report and recommendation adopted by*, 2016 WL 7238947 (N.D.N.Y. 2016). Rather, she must "show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record." *Id.*; *see also Avant v. Colvin*, 2016 WL 5799080, *3 (W.D.N.Y. 2016) ("[a]ll of [p]laintiff's arguments focus on the substantiality of the evidence supporting the ALJ's decision[;] [h]owever, as the Second Circuit has explained, 'whether there is substantial evidence supporting the claimant's views is not the question . . . [;] rather, the [c]ourt must decide whether substantial evidence supports the ALJ's decision'") (quoting *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) (brackets omitted)). The ALJ's decision in this case demonstrates that he weighed the record evidence, including the conflicting evidence; no basis exists for this Court to overturn the ALJ's assessment of the evidence or his resolution of the conflicts in it. *See Casey v. Comm'r of Soc. Sec.*, 2015 WL 5512602, *9 (N.D.N.Y. 2015) ("[i]t is the province of the [ALJ] to consider and resolve conflicts in the evidence as long as the decision rests upon adequate findings supported by evidence having rational probative force[;] . . . [the ALJ] properly considered the totality of the record evidence, and concluded that the evidence quoted above outweighed [plaintiff's] evidence to the contrary") (internal quotation omitted).

## <u>CONCLUSION</u>

After a careful review of the entire record, this Court finds that the

Commissioner's denial of DIB was based upon substantial evidence and was not erroneous as a

matter of law.  Accordingly, the ALJ's decision is affirmed.  For the reasons stated above, the

Commissioner's motion for judgment on the pleadings **(Docket # 17)** is **GRANTED**.  Plaintiff's

motion for judgment on the pleadings **(Docket # 16)** is **DENIED**, and plaintiff's complaint

(Docket # 1) is dismissed with prejudice.

**IT IS SO ORDERED.**


                                                    *s/Marian W. Payson*
                                                 MARIAN W. PAYSON
                                                 United States Magistrate Judge

Dated:  Rochester, New York
        March 23, 2022